[S. F. No. 13413. In Bank.—May 27, 1929.]

## J. A. BRYANT, Petitioner, v. THOMAS F. BOYLE, Auditor, etc., Respondent.

William F. Humphrey and A. T. O'Connell for Petitioner.

Frank L. Fenton for Respondent.

H. W. Hutton, *Amicus Curiae* in Support of Petitioner.

THE COURT.—This matter comes before us upon an alternative writ of mandate directed to the auditor of the city and county of San Francisco requiring him to audit and approve a demand of petitioner or show cause for his refusal to do so.

Petitioner alleges that, pursuant to a contract between himself and the board of park commissioners of the city and county of San Francisco, he did certain work in enlarging and improving Kezar Stadium, and under the terms of his contract the sum of $7,640 is due and owing to him; that a demand has been made therefor against the general fund, which demand was approved by the board of park commis-

sioners, by the board of supervisors and by the mayor of the city and county of San Francisco, and the defendant auditor refused to approve the same on the ground that the budget appropriation of $250,000 for the construction and completion of said Kezar Stadium was in excess of the ten-cent tax limit fixed by section 11 of article XIV of the charter for moneys to be expended by the park commissioners for the maintenance, preservation and improvement of parks, squares, avenues and grounds, and that payment of the demand on this fund was unlawful. This presents the only question involved in the proceeding.

By article XIV of the charter, the park commissioners are given the exclusive management and control of the parks, squares and public pleasure grounds and the exclusive right to erect and superintend the erection of buildings and structures thereon, and while the money necessary for the maintenance, preservation and improvement of the parks, squares, avenues and grounds is provided by section 11, there is no charter provision for money for the erection of buildings and structures.

Article XIV–A gives the playground commissioners jurisdiction over the children's playgrounds and similar public recreation centers in the city and county of San Francisco, and by section 10 of that article the supervisors are required to provide money for the development, equipment and maintenance of such playgrounds and recreation centers.

By an amendment added at the end of article XIV–A, but without being numbered as a section, the recreation centers known as "the Aquatic Park," situate adjacent to Fort Mason; "Fleishhacker Pool and Playfield," situate south of Sloat Boulevard and adjacent to the Pacific Ocean; the "Municipal Golf Links," situate in the Lake Merced lands, and "The Stadium," opposite the Polytechnic high school, together with such land now acquired or hereafter acquired by the city and county adjacent to said centers which the supervisors shall designate, shall be under the exclusive control and management of the park commissioners. There is no provision in the charter requiring the supervisors to provide funds for the maintenance and development of these recreation centers. The people of San Francisco placed them under the control of the park commissioners and required their maintenance and development,

but did not create a specific charter fund like the one created for the parks and playgrounds, and, therefore, there being no other fund created or provided, the maintenance and development of these recreation centers must be paid for from the general fund. This construction has been placed upon this provision of the charter by the officials of the city and county.

We think that, since the voters sought to charge the park commissioners with the construction and maintenance of recreation centers which are outside of the ordinary park activities, it must be held that the voters, by necessary implication, intended that the park commissioners should receive the money necessary to carry on the additional work without recourse to its regular appropriation for the operating expenses of the parks. Unless it be held that recreation centers separately constructed and placed under the jurisdiction of the park commissioners by the voters by an amendment to article XIV-A can be provided for under separate appropriation, the entire plan of the people in creating these centers by charter amendment must fail and the will and desire of the voters and taxpayers be defeated for lack of necessary funds to build and maintain these centers. Article III, chapter I, section 11 of the charter, limiting the annual maximum tax rate, except for the purposes therein mentioned, to one dollar on each one hundred dollars valuation of the property assessed furnishes a guarantee against extravagance in such appropriations from the general fund.

Let the writ of mandate issue as prayed.